WASHINGTON NATIONAL BANK *vs.* SAMUEL WILLIAMS.

Suffolk. November 27, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Execution. Practice, Civil,* Docket entries. *Evidence,* Presumptions and burden of proof.

The provision of Pub. Sts. c. 171, § 15, now R. L. c. 177, § 16, that "no execution shall be issued within twenty-four hours after the entry of judgment" is waived by an agreement of the judgment debtor filed in court "that judgment may be entered for the plaintiff and execution issued forthwith" for a sum named.

Where the record of a court shows a docket entry of a judgment, which is in accordance with an agreement of the parties filed in court, there is a presumption of fact that the entry was made upon an order of the court unless the contrary is shown.

CONTRACT, against the surety on the recognizance of one Joseph Dews, a poor debtor. Writ dated March 15, 1900.

The first trial of this case in the Superior Court was before *Mason,* C. J., who found for the defendant. Exceptions of

the plaintiff were sustained in a decision reported in 188 Mass. 103, and there was a new trial before *Hardy*, J.

At the new trial the following facts were agreed by the parties and found by the judge in accordance with that agreement:

The plaintiff recovered judgment against Dews, the principal in the recognizance, in the Superior Court for Suffolk County, on August 20, 1896, in the sum of $4,171.66, debt and $10.13, costs. The writ in that action was dated July 7, 1896, returnable on the first Monday of August, 1896, and service was accepted by Dews personally. The writ was not entered in court on the return day but on August 20, 1896; Dews personally signed an agreement for the late entry, and the writ and declaration and an answer, signed by the defendant personally, were entered on that day. The following agreement in writing was made between the plaintiff, by his attorney, and Dews and was filed on August 20, 1896:

" Commonwealth of Massachusetts, Suffolk ss., Superior Court, Washington National Bank *v.* Joseph Dews. It is agreed in the above entitled cause that judgment may be entered for the plaintiff and execution issued forthwith for the amount of $4,174.66 and costs.

" Charles H. Tyler, Plaintiff's Attorney.
" Joseph Dews."

In accordance with this agreement judgment was entered and execution issued thereon on August 20, 1896, and on the same day the arrest of Dews on the execution was authorized by *Forsaith*, J. of the Municipal Court of the City of Boston. On the same day Dews was arrested on the execution and was taken before *Forsaith*, J., where he made application to take the oath for the relief of poor debtors, and entered into a recognizance in the usual form in the penal sum of $4,500 in favor of the plaintiff with Samuel Williams, the defendant in this action, as his surety. Thereafter Dews appeared for examination from time to time in accordance with the condition of the recognizance until May 31, 1899. On September 2, 1898, while the examination of Dews by the plaintiff was pending in the municipal court, Dews was, upon his voluntary petition, adjudged a bankrupt by the District Court of the United States for the District of Rhode Island.

Before the filing of the petition in bankruptcy the examination of Dews had been continued by agreement to September 28, 1898, and on that day the time for his examination was continued in the municipal court to January 25, 1899, upon the agreement of the plaintiff and Dews, and thereafter the examination was continued by the municipal court upon similar agreements to February 1, 1899, April 5, 1899, May 10, 1899, and May 31, 1899, respectively. The record of the municipal court shows no suggestion of bankruptcy or any continuance or stay ever requested or granted on account of bankruptcy proceedings. No action was taken by or requested of the United States court with reference to the proceedings in the municipal court. On May 31, 1899, the day to which the examination had been continued, and while the question of Dews' discharge in bankruptcy was pending, Dews failed to appear and submit himself for examination in the municipal court in accordance with the condition of his recognizance. The judge ordered the default of the defendant to be recorded.

No written suggestion of bankruptcy ever was filed by Dews in the municipal court, but a verbal statement that bankruptcy proceedings were pending was made by his counsel in open court. The pendency of the bankruptcy proceedings was one of the reasons but not the sole reason for the continuance of the case in the municipal court from time to time. The examination of Dews in the bankruptcy proceedings by the plaintiff had been begun in Rhode Island before May 31, 1899, and then was pending. The plaintiff never received any dividend either in bankruptcy or elsewhere on the judgment against Dews.

The evidence in regard to the entry of judgment is described in the opinion. At the close of the evidence the defendant asked for the following special findings of fact:

1. That the judgment against Joseph Dews, the principal debtor, on which was issued the execution under which the arrest was made and the recognizance sued upon was given, was not entered under any general order of court.

2. That the execution under which the principal debtor was arrested was not issued under any general order of the court.

3. That in the action of the plaintiff against the principal debtor Dews, there was no order passed by the court, either

before or after the filing of the agreement of the parties that judgment might be entered and execution issued forthwith, directing an entry of final judgment for the plaintiff.

4. That in the action of the plaintiff against the principal debtor Dews, there was no order passed by the court, either before or after the filing of the agreement of the parties that judgment might be entered and execution issued forthwith, directing the issuing of a writ of execution in favor of the plaintiff.

The defendant also requested the following rulings:

1. If the court finds that in the case of Washington National Bank *v.* Dews, being the case in which was entered the judgment on which was issued the execution under which the arrest of the principal debtor was made and the recognizance sued on was given, there was no order of the court directing the entry of final judgment for the plaintiff which was entered in that case, the clerk had no authority to enter up the judgment, or to issue within twenty-four hours thereafter the execution which was issued, and the arrest of the principal debtor Dews made under the execution was illegal and the recognizance given by the defendant was void, and the defendant is not liable in an action thereon.

2. If the court finds that in the case of Washington National Bank *v.* Dews, being the case in which was entered the judgment on which was issued the execution under which the arrest of the principal debtor was made and the recognizance sued on was given, there was no order of the court directing the issuing of an execution within twenty-four hours after the entry of judgment in that case, the clerk had no authority to issue the execution, or to issue any execution within twenty-four hours after the entry of judgment, and the arrest of the principal debtor Dews made under the execution was illegal, and the recognizance given by the defendant was void, and the defendant is not liable in an action thereon.

3. Upon all the evidence the plaintiff cannot recover against the defendant in this action.

The judge made the following findings and rulings:

" I find the facts in accordance with the first and second requests of the defendant.

" As to the third and fourth requests of the defendant I find that the papers in the original cause and the docket show no entry of any special order of the court directing that judgment be entered and execution be issued forthwith.

" However, from the facts in evidence I assume and infer as a matter of fact as well as law that a proper order was given in accordance with the agreement· of the parties. I find no fact in evidence sufficient to rebut such inference and assumption.

" So far as the request of the defendant for rulings of law are consistent with such findings of fact above given I grant them. His other requests are denied."

The judge found for the plaintiff. He assessed damages in the penal sum of the bond, $4,500, with interest from the date of the writ, making $5,498.61, and ordered that execution issue for that sum.

The defendant alleged exceptions.

*F. H. Williams & F. M. Copeland*, for the defendant.

*H. E. Bolles, C. H. Tyler & B. D. Barker*, for the plaintiff.

HAMMOND, J. This is an action of contract against a surety on a recognizance from Joseph Dews, a poor debtor. It is agreed that the writ was entered, judgment was entered, execution was issued, the judgment debtor was arrested and the recognizance was given all on the same day.

The question is whether the execution was void as having been issued contrary to law. Pub. Sts. c. 171, § 15, (now R. L. c. 177, § 16,) in force at the time of this execution, provided that no execution should be issued "within twenty-four hours after the entry of judgment." It has been decided, however, that this provision being for the benefit of the judgment debtor can be waived by him (188 Mass. 103) ; and we are of opinion that the agreement filed in court shows such a waiver. It is contended that the plaintiff failed to show that the judgment upon which the execution issued was duly entered, either upon any general order or special order of the court. The judge found as a fact that there was no general order, but that there was a special order. The defendant contends that the finding that there was a special order was not warranted by the evidence.

Upon this matter the evidence was somewhat conflicting. The docket entries contained the following : " 1896, August 20, judg-

ment for plaintiff for $4,174.66 and costs.   Execution forthwith."
The original papers consisting of the original writ, the declaration, the answer and the agreement for judgment, all being dated August 20, 1896, and all having been entered in court on that day, were before the court.   Mr. Bearse, an assistant clerk of the court called by the defendant, testified that he had been connected with the clerk's office ever since 1887; that there was nothing on either the papers or the docket indicating any action by the court, and that "under the practice of the office if there had been any action on the part of the court it would have appeared on the docket or upon the papers."   Upon cross-examination he testified that he had nothing to do with the docket entries made in this case, nor with the entries upon the original papers; that "the entries in the docket are made up after the entries on the original papers, and making them up is a mere clerical matter for any one in the office under direction from the person who makes them on the paper, so that the real original entries are made on the papers."   He further testified that until about September 1, 1902, "it was the custom of the office to enter judgment at once upon the filing of an agreement for immediate judgment signed by both parties."   In rebuttal Mr. Willard, called by the plaintiff, testified that he was the first assistant clerk of the court, had been such for fifteen or twenty years, had been one of the clerks for twenty-eight years, and had been in the office in some capacity as an assistant for about thirty-eight years; and that during all of that time he had been practically familiar with the customs and practices of the office; that the office entries made upon the original papers in this case were all in his handwriting, but the docket entries were in the handwriting of some other person, and that it was the custom of the office to "hand over the papers to anybody to make the docket entries."   He further testified that before 1902 it always had been the practice of the office to enter judgment "forthwith, that is, on the same day, under an agreement" like the one filed in the original case; that he could not remember whether in this case he obtained an order from any judge of the court before entering the judgment; that it has not been the universal practice of the clerks to enter "their initials or the judge's initials on a paper or an order in an informal matter where the

parties have agreed." Upon cross-examination he testified that it has not always been the practice of the clerk to make a memorandum either on the docket or on the papers to the effect that the judge has made an order, that "the practice is just as much one way as the other," that it would possibly depend upon the importance of the order, and that he "should not necessarily do it in entering up by consent of parties a judgment for $4,000."

The above contains the substance of the testimony bearing upon the question whether the judgment was entered by a special order. This is not a case like *Hathaway* v. *Clark*, 5 Pick. 490, upon which the plaintiff relies, where the record fails to disclose a fact essential to the jurisdiction of the court or the validity of an order of the court. There is a record here in the shape of a docket entry, and this entry shows that judgment was entered. "The docket is the record, until the record is fully extended, and the same rules of presumed verity apply to it as to the record. Every entry is a statement of the act of the court, and must be presumed to be made by its direction, either by a particular order for that entry, or by a general order, or by a general and recognized usage and practice, which presupposes such an order. We must therefore presume that the several entries on the docket under this action were made by the clerk by proper authority." Shaw, C. J. in *Read* v. *Sutton*, 2 Cush. 115, 123. We cannot say that, in coming to the conclusion that as a matter of fact this presumption was not controlled by the testimony, the trial judge in the case before us made any error. The finding was warranted by the whole evidence. We see no error of law in the conduct of the trial.

*Exceptions overruled.*